**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

CARA TRUAX, on behalf of herself and all
others similarly situated,

                Plaintiff,

v.

ACELLA PHARMACEUTICALS, LLC,

                Defendant.

_____/

Case No.

**CLASS ACTION COMPLAINT AND
DEMAND FOR JURY TRIAL**

Plaintiff Cara Truax ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Acella Pharmaceuticals, LLC ("Acella" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION AND FACTS COMMON TO ALL CLAIMS

1.    This is a class action lawsuit regarding Defendant Acella's manufacturing and distribution of a prescription thyroid medication containing Levothyroxine and Liothyronine: NP Thyroid ("Thyroid Tablets"). Testing has found certain lots of the Thyroid Tablets to be subpotent, meaning the Thyroid Tablets contain less of the active ingredient than as advertised and as stated on the products' labeling and packaging. Testing has also found other lots of the Thyroid Tablets to be superpotent, meaning the product contains more of the active ingredient than as advertised and as stated on the products' labeling and packaging.

2.    Levothyroxine (tetraiodothyronine sodium) and liothyronine (liothyronine sodium) are generic prescription medications indicated as a replacement or supplemental therapy in patients with hypothyroidism, among other conditions. Levothyroxine was first made in 1927,

and it is on the World Health Organization's List of Essential Medicines, the most effective and safe medicines needed in a health system.  Likewise, liothyronine may be used instead of or in addition to Levothyroxine for treating thyroid disorders.  Compared to Levothyroxine, Liothyronine has a faster onset of action as well as a shorter biological half-life.

3.       Defendant combines both compounds into a generic formulation, which is branded as "NP Thyroid."

4.       The Thyroid Tablets are advertised as effective treatments for hypothyroidism (underactive thyroid).  "The thyroid's job is to make thyroid hormones, which are secreted into the blood and then carried to every tissue in the body.  [The] [t]hyroid hormone helps the body use energy, stay warm[,] and keep the brain, heart, muscles, and other organs working as they should."[1]  Accordingly, people with hypothyroidism may be at risk for a number of health conditions "such as obesity, joint pain, infertility and heart disease."[2]

5.       Acella touts that it is dedicated to "[d]elivering quality products at affordable prices."

6.       Acella represents that its NP Thyroid tablets contain 38 mcg levothyroxine (T4) and 9 mcg liothyronine (T3) per each 60-milligram tablet.[3]

7.       On May 22, 2020, Acella announced that it was "recalling a total of 13 lots of 30-mg, 60-mg and 90-mg NP Thyroid® (thyroid tablets, USP)" because testing found "the product

---

[1] *Hypothyroidism FAQs*, AMERICAN THYROID ASSOCIATION, https://www.thyroid.org/hypothyroidism/.

[2] *Hypothyroidism (underactive thyroid)*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/hypothyroidism/symptoms-causes/syc-20350284.

[3] *NP Thyroid 30*, DRUGS.COM, https://www.drugs.com/pro/np-thyroid-30.html.  A 60-milligram tablet contains one (1) grain of thyroid.  *A Natural Choice for Thyroid Therapy,* Acella, https://npthyroid.com/wp-content/uploads/2019/09/AC-053_NPThyroid_ConversionChart_v20-WEB.pdf.

may have up to 115.0% of the labeled amount of Liothyronine (T3)."[4]  The lots affected are as follows:

| Product | NDC | Lot # | Exp. Date |
|---------|-----|-------|-----------|
| NP Thyroid 30 mg | 42192-329-01 | M329A19-1 | 20-Dec |
| | | M329H18-1 | 20-Jul |
| | | M329J18-1 | 20-Aug |
| | | M329J18-2 | 20-Aug |
| | | M329J18-3 | 20-Aug |
| | | M329M18-2 | 20-Nov |
| NP Thyroid 60 mg | 42192-330-01 | M330J18-2A | 20-Aug |
| | | M330J18-3 | 20-Aug |
| NP Thyroid 90 mg | 42192-331-01 | M331G18-1 | 20-Jun |
| | | M331J18-1 | 20-Aug |

8.     The U.S. Food and Drug Administration ("FDA") warned that "[p]atients being treated for hypothyroidism (underactive thyroid), who receive superpotent NP Thyroid, may experience signs and symptoms of hyperthyroidism (overactive thyroid) which include, but are not limited to, weight loss, heat intolerance, fatigue, muscle weakness, hypertension, chest pain, rapid heart rate, or heart rhythm disturbances."[5]

9.     Then, on September 17, 2020, Acella announced that it was "recalling one lot of 15-mg and one lot of 120-mg NP Thyroid®, Thyroid Tablets, USP [levothyroxine (T4) and liothyronine (T3)] … because testing has found these lots to be sub potent. The product may

---

[4] ACELLA PHARMACEUTICALS, LLC ISSUES VOLUNTARY NATIONWIDE RECALL OF CERTAIN LOTS OF NP THYROID® (THYROID TABLETS, USP) DUE TO SUPER POTENCY, https://getrealthyroid.com/voluntary-recall-information.html.

[5] *Id*.

have as low as 87% of the labeled amount of levothyroxine (T4)."[6]  The lots affected are as follows:

| Product | NDC | Lot # | Exp. Date |
|---|---|---|---|
| NP Thyroid® 15, Thyroid Tablets, USP, ¼ grain (15 mg) | 42192-327-01 | M327E19-1 | October 2020 |
| NP Thyroid® 120, Thyroid Tablets, USP, 2 grain (120 mg) | 42192-328-01 | M328F19-3 | November 2020 |

10.    The FDA warned that "[p]atients being treated for hypothyroidism (underactive thyroid), who receive sub potent NP Thyroid®, may experience signs and symptoms of hypothyroidism (underactive thyroid) which may include, fatigue, increased sensitivity to cold, constipation, dry skin, puffy face, hair loss, slow heart rate, depression, swelling of the thyroid gland[,] and/or unexplained weight gain or difficulty losing weight."[7]

11.    Plaintiff and the Class were injured by the purchase price of their Thyroid Tablets. These medications are worthless, or worth significantly less than what Plaintiff and Class members paid for them, because the Thyroid Tablets are either superpotent or subpotent and are therefore ineffective to treat hypothyroidism.  This is underscored by Acella's voluntary recall of certain lots of NP Thyroid due to the superpotency or subpotency issues.

12.    Had Plaintiff and Class members been aware of the superpotency or subpotency potency issues, they would not have purchased the Thyroid Tablets, or would have paid significantly less for them.  Accordingly, Plaintiff and Class members were injured by the price they paid for the superpotency or subpotency Thyroid Tablets, or in the amount of the difference

---

[6] ACELLA PHARMACEUTICALS, LLC ISSUES VOLUNTARY NATIONWIDE RECALL OF TWO LOTS OF NP THYROID®, THYROID TABLETS, USP DUE TO SUB POTENCY,
https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/acella-pharmaceuticals-llc-issues-voluntary-nationwide-recall-two-lots-np-thyroidr-thyroid-tablets

[7] *Id.*

between the Thyroid Tablets as warranted and the Thyroid Tablets actually received by Plaintiff and Class members.

13.     Plaintiff brings this action on behalf of herself and the Class for equitable relief and to recover damages and restitution for: (i) breach of express warranty, (ii) breach of the implied warranty of merchantability, (iii) violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*, (iv) unjust enrichment, (v) negligence, (vi) gross negligence, and (vii) conversion.

## PARTIES

14.     Plaintiff Cara Truax is a citizen of Florida who resides in Lake County, Florida. In March 2020, while in Florida, Ms. Truax was prescribed, purchased, and consumed NP Thyroid manufactured and distributed by Defendant Acella.  Ms. Truax paid approximately $57 for a 90-day supply of NP Thyroid 30 milligram tablets, which bore the NDC number 42192-0329-01.  Ms. Truax originally learned about the Thyroid Tablets superpotency recall by receiving a text and call from the pharmacy at Publix Super Market concerning the issue.  Ms. Truax has been using Thyroid Tablets manufactured and distributed by Acella.  When purchasing her Thyroid Tablets from Defendant, Ms. Truax reviewed the accompanying labels and disclosures, and understood them as representations and warranties by the manufacturer, distributor, and pharmacy that the medications were properly manufactured and contained the appropriate level of thyroid.  Ms. Truax relied on these representations and warranties in deciding to purchase her Thyroid Tablets from Defendant, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased her Thyroid Tablets from Defendant if she had known that they were not, in fact, properly manufactured and were superpotent.  Ms. Truax also understood that each purchase involved a

direct transaction between herself and Acella, because her medication came with packaging and other materials prepared by Acella, including representations and warranties that her medications were properly manufactured and free from defects.

15.     Likewise, in March 2020, while in Florida, Ms. Truax was prescribed, purchased, and consumed NP Thyroid manufactured and distributed by Defendant Acella.  Ms. Truax paid approximately $92 for a 90-day supply of NP Thyroid 120 milligram tablets, which bore the NDC number 42192-0328-01.  Ms. Truax originally learned about the Thyroid Tablets subpotency recall by receiving a letter dated September 25, 2020 from her pharmacy, CVS, which informed her that Acella was recalling her medication "because these tablets may be sub potent, which could be a health hazard or safety risk to patients using product affected by this recall."  Ms. Truax has been using Thyroid Tablets manufactured and distributed by Acella. When purchasing her Thyroid Tablets from Defendant, Ms. Truax reviewed the accompanying labels and disclosures, and understood them as representations and warranties by the manufacturer, distributor, and pharmacy that the medications were properly manufactured and contained the appropriate level of thyroid.  Ms. Truax relied on these representations and warranties in deciding to purchase her Thyroid Tablets from Defendant, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased her Thyroid Tablets from Defendant if she had known that they were not, in fact, properly manufactured and were subpotent.  Ms. Truax also understood that each purchase involved a direct transaction between herself and Acella, because her medication came with packaging and other materials prepared by Acella, including representations and warranties that her medications were properly manufactured and free from defects.

16.     Defendant Acella Pharmaceuticals, LLC is a corporation incorporated under the

laws of Delaware with a principal place of business at 1880 McFarland Parkway, Suite 110-B,

Alpharetta, Georgia 30005.  Defendant conducts substantial business in the United States,

including in the state of Florida.  Defendant has been engaged in the manufacturing, sale, and

distribution of superpotent and subpotent Thyroid Tablets in the United States, including the

state of Florida.

### JURISDICTION AND VENUE

17.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A),

as modified by the Class Action Fairness Act of 2005, because at least one member of the Class,

as defined below, is a citizen of a different state than Defendant, there are more than 100

members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of

interest and costs.

18.    This Court has personal jurisdiction over Defendant because Defendant conducts

substantial business in and has sufficient contacts with this District such that Defendant could

reasonably foresee litigation being brought against it in this District.  Additionally, Plaintiff's

purchases of the Thyroid Tablets at issue occurred in this District.

19.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial

portion of the events giving rise to this action occurred in this District, including but not limited

to Plaintiff's purchase of the Thyroid Tablets at issue.

### CLASS ALLEGATIONS

20.    Plaintiff seeks to represent the following classes:

> All persons in the United States who purchased or paid for Thyroid
> Tablets that are subject to Acella's recall for superpotency (the
> "Superpotent Class").

> All persons in the United States who purchased or paid for Thyroid
> Tablets that are subject to Acella's recall for subpotency (the

"Subpotent Class") (The Superpotent Class and Subpotent Class are collectively referred to as the "Classes").

21.     Specifically excluded from the Classes are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and any of its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

22.     Plaintiff also seeks to represent a subclass consisting of Superpotent Class members who reside in Florida (the "Superpotent Subclass").  Plaintiff further seeks to represent a subclass consisting of Subpotent Class members who reside in Florida (the "Subpotent Subclass") (collectively, the "Subclasses").

23.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Classes and Subclasses may be expanded or narrowed by amendment or amended complaint.

24.     **Numerosity.**  The members of the Classes and Subclasses are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are tens of thousands of members in the Classes and Subclasses.  Although the precise number of members of the Classes and Subclasses is unknown to Plaintiff, the true number of members of the Classes and Subclasses is known by Defendant and may be determined through discovery.  Members of the Classes and Subclasses may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

25.     **Existence and predominance of common questions of law and fact.**  Common

questions of law and fact exist as to all members of the Classes and Subclasses and predominate

over any questions affecting only individual Class members.  These common legal and factual

questions include, but are not limited to, the following:

> (a)    whether the Thyroid Tablets manufactured, distributed, and sold by
> Defendant were in fact superpotent or subpotent;

> (b)    whether Defendant knew or should have known that the Thyroid
> Tablets were in fact superpotent or subpotent;

> (c)    whether Defendant unlawfully converted money from Plaintiff and
> the Classes and Subclasses;

> (d)    whether Defendant is liable to Plaintiff and the Classes and
> Subclasses for unjust enrichment;

> (e)    whether Defendant is liable to Plaintiff and the Subclasses for
> violations of Florida's consumer protection law; and

> (f)    whether Plaintiff and the Classes and Subclasses are entitled to
> damages, and the proper measure for such damages.

26.    **Typicality.**  Plaintiff's claims are typical of the claims of the other members of

the Class in that, among other things, all Members of the Classes and Subclasses were similarly

situated and were comparably injured through Defendant's wrongful conduct as set forth herein.

Further, there are no defenses available to Defendant that are unique to Plaintiff.

27.    **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the

interests of the Classes and Subclasses.  Plaintiff has retained counsel that is highly experienced

in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this

action on behalf of the Classes and Subclasses.  Furthermore, Plaintiff has no interests that are

antagonistic to those of the Classes or Subclasses.

28.    **Superiority.**  A class action is superior to all other available means for the fair

and efficient adjudication of this controversy.  The damages or other financial detriment suffered

by individual Members of the Classes and Subclasses are relatively small compared to the burden and expense of individual litigation of her claims against Defendant.  It would, thus, be virtually impossible for the Classes or Subclasses, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Members of the Classes or Subclasses could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

29.     In the alternative, the Classes and Subclasses may also be certified because:

(a)     the prosecution of separate actions by individual Members of the Classes and Subclasses would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

(b)     the prosecution of separate actions by individual Members of the Classes and Subclasses would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede her ability to protect her interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

### COUNT I
### Breach Of Express Warranty
### (On Behalf Of The Classes and Subclasses)

30.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-29 above.

31.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes and Subclasses against Defendant.

32.     Plaintiff, and each member of the Classes and Subclasses, formed a contract with Defendant at the time Plaintiff and the other Members of the Classes and Subclasses purchased the superpotent and subpotent Thyroid Tablets.  The terms of the contract include the promises and affirmations of fact made by Defendant on the Thyroid Tablets' packaging and through marketing and advertising, including that the product would contain the proper dose or amount of levothyroxine and liothyronine.

33.     This labeling, marketing, and advertising constitutes express warranties that became part of the basis of the bargain, and are part of the standardized contract between Plaintiff and the members of the Classes and Subclasses and Defendant.

34.     Plaintiff and members of the Classes and Subclasses relied on the express warranty that their medication would contain what was stated on the label, and would not be superpotent or subpotent.

35.     Plaintiff purchased her medication in reliance on the express warranty that her Thyroid Tablets would contain 38 mcg levothyroxine (T4) and 9 mcg liothyronine (T3) per each 60-milligram tablet., which was the therapeutic dose she was prescribed.  However, FDA testing has revealed that Plaintiff did not, in fact, receive the therapeutic dose intended. This was due to manufacturing defects which caused the Thyroid Tablets to be superpotent in one case, and

11

subpotent in the other. As such, Defendant breached express warranties made to Plaintiff. Due to the superpotency and subpotency issues, the Thyroid Tablets did not adequately address the condition for which it was prescribed and indeed was recalled because it presented a danger to Plaintiff and members of the Classes and Subclasses.

36.     Defendant breached express warranties regarding the superpotent and subpotent Thyroid Tablets and their qualities because Defendant's statements about the superpotent and subpotent Thyroid Tablets were false and the superpotent and subpotent medications do not conform to Defendant's affirmations and promises described above.

37.     Plaintiff and each of the members of the Classes and Subclasses would not have purchased the Thyroid Tablets, or would have paid significantly less for them, had they known the true nature of the Thyroid Tablet's ingredients and what the medication contained.

38.     As a result of Defendant's breach of express warranties, Plaintiff and each member of the Classes and Subclasses have been damaged in the amount of the purchase price of the Thyroid Tablets and any consequential damages resulting from the purchases, or in the amount of the difference between the Thyroid Tablets as warranted and the Thyroid Tablets actually received by Plaintiff and Class members.

39.     On October 8, 2020, prior to filing this action, Defendant was served with a pre-suit notice letter that complied in all respects with U.C.C. §§ 2-313, 2-607.  Plaintiff's counsel sent Defendant a letter advising that it breached an express warranty and demanded that it cease and desist from such breaches and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's counsel's letter is attached hereto as **Exhibit A**.

## COUNT II
### Breach Of Implied Warranty
### (On Behalf Of The Classes and Subclasses)

40.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-29 above.

41.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes and Subclasses against Defendant.

42.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the Thyroid Tablets (i) were not superpotent or subpotent and (ii) contained the appropriate amounts of levothyroxine and liothyronine necessary for treating hypothyroidism.

43.     Defendant breached the warranty implied in the contract for the sale of the superpotent and subpotent Thyroid Tablets because they could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because the Thyroid Tablets manufactured, distributed, and sold by Defendant were superpotent or subpotent, and as such are not effective to treat hypothyroidism.  As a result, Plaintiff and Members of the Classes and Subclasses did not receive the goods as impliedly warranted by Defendant to be merchantable.

44.     Plaintiff and Members of the Classes and Subclasses purchased the Thyroid Tablets in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

45.     The Thyroid Tablets were not altered by Plaintiff or Members of the Classes or Subclasses.

46.     The Thyroid Tablets were defective when they left the exclusive control of Defendant.

47.     Defendant knew that the Thyroid Tablets would be purchased and used without additional testing by Plaintiff and Members of the Classes and Subclasses.

48.     The superpotent and subpotent Thyroid Tablets were defectively manufactured and unfit for their intended purpose, and Plaintiff and Members of the Classes and Subclasses did not receive the goods as warranted.

49.     As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and Members of the Classes and Subclasses have been injured and harmed because:  (a) they would not have purchased the Thyroid Tablets on the same terms if they knew that the products were superpotent or subpotent and therefore not effective to treat hypothyroidism; and (b) the Thyroid Tablets do not have the characteristics, ingredients, uses, or benefits as promised by Defendant.

### COUNT III
**Violation of Florida's Deceptive and Unfair Trade Practices Act,**
**Fla. Stat. §§ 501.201 *et seq.***
**(On Behalf Of The Subclass)**

50.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-29 above.

51.     Plaintiff brings this claim individually and on behalf of the members of the proposed Subclasses against Defendant.

52.     Defendant violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 *et seq.*, by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of its business.  "Deception occurs if there is a representation, omission, or practice that is likely to

mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003).

53.     FDUTPA is "a consumer protection law intended to protect the consuming public

and legitimate business enterprises from those who engage in unfair methods of competition, or

unconscionable, deceptive, or unfair acts or practices in the course of any trade or commerce."

*Tuckish v. Pompano Motor Co.*, 337 F. Supp. 2d 1313, 1319 (S.D. Fla. 2004); Fla. Stat. §

501.202.  In the interests of consumer protection, FDUTPA should be "liberally construed."

*Samuels v. King Motor Co.*, 782 So. 2d 489, 499 (Fla. 4th Dist. Ct. App. 2001).

54.     Plaintiff and members of the Subclass are consumers within the meaning of

FDUTPA.

55.     The Thyroid Tablets are goods within the meaning of FDUTPA.

56.     Defendant is engaged in trade or commerce within the meaning of FDUTPA.

57.     The material misrepresentations and omissions alleged herein constitute deceptive

and unfair trade practices in that they were intended to and did deceive Plaintiff and the general

public into believing that the Thyroid Tablets contained the requisite amount of liothyronine and

levothyroxine necessary to treat hypothyroidism when, in fact, the Thyroid Tablets were

superpotent or subpotent.  Indeed, despite recalling its Thyroid Tablets in May 2020 due to the

superpotency issue, Defendant did not alter its manufacturing practices or safeguards, which led

to the subpotency issue and recall in September 2020.

58.     The advertising and labeling discussed in detail above is likely to, and does,

mislead reasonable consumers.

59.     Unlike common law fraud, subjective evidence of reliance on the part of each

putative Class member is not required under FDUPTA.  *See Davis v. Powertel, Inc.*, 776 So. 2d

971, 974 (Fla. 1st Dist. Ct. App. 2000); *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692 (S.D. Fla. 2010).  Thus, "the question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstance."  *Davis*, 776 So. 2d at 974.  Nevertheless, Plaintiff and members of the Subclass relied on Defendant's statements, believing that the Thyroid Tablets contained the requisite amount of liothyronine and levothyroxine necessary to treat hypothyroidism and contained the therapeutic dose stated on the label.

60.    Had Plaintiff and the Subclass members known that the Thyroid Tablets were superpotent or subpotent and ineffective as such, they would not have purchased the Thyroid Tablets or would not have purchased the Thyroid Tablets on the same terms.

61.    As a result of Defendant's deceptive and unfair acts, Plaintiff and the Subclass members have been damaged in the amount of the purchase price of the Thyroid Tablets or the difference between the price premium paid for the Thyroid Tablets and the price they would have paid had they known that the Thyroid Tablets did not have the qualities as advertised.

62.    Defendant's conduct offends established public policy and is substantially injurious to consumers.  Defendant's practices as described herein are of no benefit to consumers who are tricked into believing that the Thyroid Tablets contained the requisite amount of liothyronine and levothyroxine necessary to treat hypothyroidism.  In fact, Defendant's practices are dangerous because consumers who use subpotent thyroid medications risk experiencing symptoms of hypothyroidism, including fatigue, increased sensitivity to cold, constipation, dry skin, puffy face, hair loss, slow heart rate, depression, swelling of the thyroid gland, and unexplained weight gain or difficulty losing weight.  Likewise, consumers who use superpotent thyroid medications risk experiencing symptoms of hyperthyroidism, including weight loss, heat

intolerance, fatigue, muscle weakness, hypertension, chest pain, rapid heart rate, or heart rhythm disturbances.

63.     Plaintiff and Subclass members are entitled to damages in an amount to be proven at trial, but not less than either the purchase price of the Thyroid Tablets or the difference between the price premium paid for the Thyroid Tablets and the price Plaintiff and Subclass members would have paid had they known that the Thyroid Tablets were not as advertised.  The price Plaintiff and Subclass members would have paid is no more than the market value of the Thyroid Tablets, had Plaintiff and Subclass members known that the Thyroid Tablets do not perform as advertised.

64.     The damages suffered by Plaintiff and Subclass members were directly and proximately caused by the deceptive, misleading, and unfair practices of Defendant, as described herein.

65.     Pursuant to Fla. Stat. § 501.211(1), Plaintiff and the Subclass seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Defendant, as well as for restitution and disgorgement.

66.     In addition, pursuant to Fla. Stat. §§ 501.211(2), and 501.2105, Plaintiff and the Subclass make claims for damages, attorneys' fees, and costs.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf Of The Classes and Subclasses)**

67.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-29 above.

68.     Plaintiff brings this claim individually and on behalf of the members of the Classes and Subclasses against Defendant.

69.     Plaintiff and the Classes and Subclasses conferred a direct benefit on Defendant in the form of monies paid to purchase Defendant's superpotent and subpotent Thyroid Tablets.

70.     Defendant voluntarily accepted and retained this benefit.

71.     Because this benefit was obtained unlawfully, namely by selling and accepting compensation for superpotent and subpotent medications ineffective to treat hypothyroidism, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

### COUNT V
### Negligence
### (On Behalf Of The Classes and Subclasses)

72.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-29 above.

73.     Plaintiff brings this claim individually and on behalf of the members of the Classes and Subclasses against Defendant.

74.     Defendant owed a duty of care to Plaintiff to manufacture, distribute, and sell the subject Thyroid Tablets free from defects.

75.     Defendant breached that duty by manufacturing, distributing, and selling superpotent and subpotent Thyroid Tablets.

76.     Plaintiff and members of the Classes and Subclasses were injured by ingesting a superpotent or subpotent prescription medication, which was manufactured, distributed, and sold by Defendant.  Plaintiff and members of the Classes and Subclasses also suffered economic damages from the purchase of their Thyroid Tablets.

77.     Importantly, Plaintiff and the Class members do not seek resolution of downstream effects such as the symptoms of untreated hypothyroidism and other individualized

illnesses on a class-wide basis.  Any such actions can and should be redressed on an individual

basis as they arise.  However, because of the superpotency and subpotency of the Thyroid

Tablets, Plaintiff and members of the Classes and Subclasses suffered a concrete and identical

harm that can and should be addressed on a class-wide basis (*i.e.*, the purchase price of their

medications and the imminent risk of injury).

78.     Because the Thyroid Tablets manufactured, distributed, and sold by Defendant

were superpotent or subpotent and ineffective, which constituted a breach of Defendant's duty to

Plaintiff and members of the Classes and Subclasses, Defendant is negligent and are liable to

Plaintiff and Classes and Subclasses for all injuries proximately caused by Defendant's

negligence.

**COUNT VI**
**Gross Negligence**
**(On Behalf Of The Classes and Subclasses)**

79.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs

1-29 above.

80.     Plaintiff brings this claim individually and on behalf of the members of the

Classes and Subclasses against Defendant.

81.     Defendant owed a duty of care to Plaintiff to manufacture, distribute, and sell the

subject Thyroid Tablets free from defects.

82.     Defendant breached that duty by manufacturing, distributing, and selling

superpotent and subpotent Thyroid Tablets.

83.     Plaintiff and members of the Classes and Subclasses were injured by ingesting a

superpotent or subpotent prescription medication, which was manufactured, distributed, and sold

19

by Defendant.  Plaintiff and members of the Classes and Subclasses also suffered economic damages from the purchase of their Thyroid Tablets.

84.     Importantly, Plaintiff and the Class members do not seek resolution of downstream effects such as the symptoms of untreated hypothyroidism and other individualized illnesses on a class-wide basis.  Any such actions can and should be redressed on an individual basis as they arise.  However, because of the subpotency of the Thyroid Tablets, Plaintiff and members of the Classes and Subclasses suffered a concrete and identical harm that can and should be addressed on a class-wide basis (*i.e.*, the purchase price of their medications).

85.     Defendant's conduct evinces a reckless disregard for the rights of others, and strongly suggests intentional wrongdoing.  Defendant did not institute proper safeguards or controls in its manufacturing process in order to prevent the potency issues, which can cause an imminent risk of harm to patients.  Further, despite recalling its Thyroid Tablets in May 2020 due to the superpotency issue, Defendant did not alter its manufacturing practices or safeguards, which led to the subpotency issue and recall in September 2020.

86.     Because the Thyroid Tablets manufactured, distributed, and sold by Defendant were superpotent or subpotent and ineffective, which constituted a breach of Defendant's duty to Plaintiff and members of the Classes and Subclasses, Defendant is negligent and are liable to Plaintiff and Classes and Subclasses for all injuries proximately caused by Defendant's gross negligence.

<u>**COUNT VII**</u>
**Conversion**
**(On Behalf Of The Classes and Subclasses)**

87.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-29 above.

88.     Plaintiff brings this claim individually and on behalf of the members of the

Classes and Subclasses against Defendant.

89.     Plaintiff and the Classes and Subclasses have an ownership right to the monies

paid for the superpotent and subpotent Thyroid Tablets manufactured, distributed, and sold by

Defendant.

90.     Defendant has wrongly asserted dominion over the payments illegally diverted to

them for the superpotent and subpotent medication.  Defendant has done so every time that

Plaintiff and the Classes and Subclasses have paid to have their prescriptions filled.

91.     As a direct and proximate cause of Defendant's conversion, Plaintiff and the

Classes and Subclasses suffered damages in the amount of the payments made for each time they

filled their prescriptions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks

judgment against Defendant, as follows:

(a)     For an order certifying the Classes and Subclasses under Rule 23 of
the Federal Rules of Civil Procedure and naming Plaintiff as
representative of the Classes and Subclasses and Plaintiff's
attorneys as Class Counsel to represent the Classes and Subclasses;

(b)     For an order finding in favor of Plaintiff and the Classes and
Subclasses on all counts asserted herein;

(c)     For compensatory and punitive damages in amounts to be
determined by the Court and/or jury;

(d)     For prejudgment interest on all amounts awarded;

(e)     For an order of restitution and all other forms of equitable monetary
relief;

(f)     For injunctive relief as pleaded or as the Court may deem proper;
and

(g)     For an order awarding Plaintiff and the Classes and Subclasses their
reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: October 13, 2020                Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:    _/s/ Sarah N. Westcot_____
Sarah N. Westcot

Sarah N. Westcot (FBN:  1018272)
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
Email: swestcot@bursor.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant (*Pro hac vice app. forthcoming*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email: ndekant@bursor.com

*Attorneys for Plaintiff*